COMMONWEALTH *vs.* JOHN DOE.[1]

Worcester. September 11, 1989. — October 4, 1989.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Contempt. Corporation,* Close corporation, Custodian of corporate records. *Constitutional Law,* Self-incrimination.

The custodian of the records of a business corporation, who asserted that the act of producing those records before a grand jury pursuant to a subpoena duces tecum would tend to incriminate him personally, properly invoked the privilege against self-incrimination secured to him by art. 12 of the Massachusetts Declaration of Rights. [678-681]

ADJUDICATION of contempt in the Superior Court Department by *James P. Donohue,* J., on May 3, 1989.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Paul W. Shaw* for the witness.

*Judy G. Zeprun,* Assistant Attorney General, for the Commonwealth.

NOLAN, J. The witness appeals from a judgment of a Superior Court judge holding him in civil contempt for refusing to produce certain items requested in a subpoena duces tecum. A single justice of the Appeals Court stayed execution of the sentence imposed on the witness pending the outcome of this appeal. We transferred the case from the Appeals Court on our own motion.

The witness is the sole stockholder, sole director, president, and treasurer of a Massachusetts corporation (corporation). The witness's wife is the clerk of the corporation. The witness is also the custodian of the corporate and business records of the corporation. Since 1981, the corporation has been involved in the service, repair, and sale of computer equipment.

---

[1] We do not identify the parties to this appeal because grand jury proceedings are secret.

On April 11, 1989, a Worcester County grand jury issued a subpoena duces tecum commanding the "Keeper of the Records" for the corporation to appear before the grand jury on May 3, 1989. The subpoena also requested that the record keeper bring with him a number of documents relating to the corporation's business and a particular computer software system. In addition, the subpoena requested production of the software system itself.

The witness filed a motion to quash the subpoena duces tecum served upon the corporation. With his motion, the witness filed an affidavit in which he averred that he was the "Keeper of the Records" for the corporation. The witness also stated his belief that "the documents and other materials requested by the present subpoena contain information which could be used in connection with a potential criminal prosecution of either myself or [the corporation]." The witness asserted that compliance with the subpoena's request for documents would cause him to incriminate himself in contravention of his rights under art. 12 of the Massachusetts Declaration of Rights.

A Superior Court judge denied the witness's motion to quash the subpoena. The judge ordered the witness to appear before the grand jury and to produce the materials requested by the subpoena. The witness subsequently appeared before the grand jury and stated that he was appearing pursuant to the subpoena duces tecum issued to the keeper of the records for the corporation. In response to both questions and demands for the materials listed in the subpoena, the witness invoked his privilege against self-incrimination pursuant to art. 12.

Following the witness's purported invocation of the right against self-incrimination, the Commonwealth moved to have the witness adjudged in civil contempt. The judge ruled that the witness was indeed in contempt of court and ordered him incarcerated until he complied with the demands of the subpoena duces tecum.[2]

---

[2] The judge did not make any specific findings as to whether the materials requested in the subpoena duces tecum or the act of producing those materials

On appeal, the witness argues that it was error to hold him in contempt of court. The witness contends that, under art. 12, a custodian of corporate records cannot be compelled to turn over the corporate records when the act of doing so will incriminate him personally. The witness also contends that the records of a close corporation with a single stockholder and director are essentially the records of a sole proprietorship and should be protected under art. 12. Finally, the witness argues that art. 12 gives a` close corporation the privilege against self-incrimination which can be invoked by the keeper of the records for that corporation.

The witness in this case concedes, as he must, that the privilege under the Fifth Amendment to the United States Constitution does not extend to one in his position.[3] Instead, the witness argues to this court that art. 12 offers him a privilege broader than that of the Fifth Amendment. In the past, this court has recognized that the protections of art. 12 extend beyond the safeguards afforded by the United States Constitution. See *Attorney Gen.* v. *Colleton*, 387 Mass. 790, 795-796 (1982). Today we hold that a custodian of corporate records may invoke his art. 12 right against self-incrimination in response to a subpoena for those corporate records when the act of production itself would be self-incriminating. Our decision is based on the Massachusetts State Constitution. See *Michigan* v. *Long*, 463 U.S. 1032, 1041 (1983).

Article 12 states, in part: "No subject shall . . . be compelled to accuse, or furnish evidence against himself." At the heart

---

would tend to incriminate either the witness or the corporation. Rather, the judge concluded that the witness had no right to withhold the information even if it was incriminating.

[3] In Fifth Amendment jurisprudence, it is settled that a corporation cannot resist compelled production of its documents by claiming that such documents will incriminate the corporation. *Hale* v. *Henkel*, 201 U.S. 43, 74-75 (1906). While a sole proprietor may contend that the *act* of producing his own unprotected business records is privileged, *United States* v. *Doe*, 465 U.S. 605, 612-614 (1984), a custodian of corporate records may not rely on the privilege even where his act of production would incriminate him personally. *Braswell* v. *United States*, 487 U.S. 99 (1988).

of this provision is the right of the subjects of this Common-wealth to be free from compelled testimonial incrimination — "the forced extraction of confessions and admissions from the lips of the accused." *Commonwealth* v. *Brennan*, 386 Mass. 772, 780 (1982). Article 12 applies only to evidence of a testimonial or communicative nature. *Id*. at 783.

The Superior Court judge held the witness in contempt be-cause he refused to produce the items listed in the subpoena duces tecum. This court has held that the act of production, quite apart from the content of that which is produced, may itself be communicative. *Commonwealth* v. *Hughes*, 380 Mass. 583, cert. denied, 449 U.S. 900 (1980). See *United States* v. *Doe*, 465 U.S. 605, 612 (1984). If the witness should turn over the materials sought by the Commonwealth, he would be testifying, in effect, as to the existence and location of those materials, as well as to the control that he had over them. See *Hughes*, *supra* at 592. In addition, the witness would be authen-ticating those materials. *Id*. All this information is reflective of the knowledge, understanding, and thoughts of the witness. To that degree it is testimonial and, therefore, within the ambit of art. 12.

The Commonwealth contends that we should adopt the rule enunciated in *Braswell* v. *United States*, 487 U.S. 99, 108-109 (1988). In that case the Supreme Court held that a custodian of corporate records cannot rely upon the Fifth Amendment privilege against self-incrimination. *Id*. at 109. The Court reasoned that the custodian acts only as a representative, and that his act, therefore, is deemed to be one of the corporation only and not an act of the individual. *Id*. at 110. We decline to engage in such a fiction. The act of production is demanded *of the witness* and the possibility of self-incrimination is inherent in that act. The witness's status as a representative does not alter the fact that in so far as he is a natural person he is entitled to the protection of art. 12. It would be factually unsound to hold that requiring *the witness* to furnish corporate records, the act of which would incriminate him, is not *his act*. As we said in *Emery's Case*, 107 Mass. 172, 181 (1871), "[i]f the disclosure . . . would be capable of being used against himself . . . such disclosure would be an accusation of himself, within

the meaning of the constitutional provision." The same is true here when the witness's act of production would incriminate him. His status as custodian of the corporation's records does not require that he lose his individual privilege under art. 12.

The Commonwealth also argues that, by doing business in the corporate form, the witness waived the right to refuse to produce corporate records. The privilege against self-incrimination, being a personal right, may certainly be waived by the person holding that privilege. See *Rogers* v. *United States*, 340 U.S. 367, 373 (1951) ("[d]isclosure of a fact waives the privilege as to details"). Such a waiver, however, must be knowing and intelligent. See *Blaisdell* v. *Commonwealth*, 372 Mass. 753, 764 (1977) (mere interposition of insanity defense is not a waiver of privilege); *Jones* v. *Commonwealth*, 327 Mass. 491 (1951) (where individual testified on one matter, art. 12 privilege was not waived as to another matter not relevant to the first matter). On the record before us, we have no facts from which to determine whether the witness knowingly relinquished his personal right against self-incrimination simply by becoming the custodian of the corporation's records.

The Commonwealth has expressed concern that one in the witness's position can "shield" a corporation and thereby undermine the government's interest in investigating corporate criminal conduct. As we have said in the Fifth Amendment context, however, "[w]here the privilege is applicable, the constitutionally required result is that no balancing of State-defendant interests is permissible to facilitate the admittedly difficult burdens of the prosecution." *Blaisdell, supra* at 761. In any event, we think that our conclusion will not have a drastic impact on investigations of corporate wrongdoing. We hold only that an *individual* cannot be held in contempt for refusing to turn over records when the act of doing so would incrimate *him* personally. When the act of production is not incriminating to a witness, that witness has no privilege. See *Matter of Kenney*, 399 Mass. 431, 441 (1987) (act of producing required records not privileged because the act of doing so is not incriminating). When it is a "foregone conclusion" that a witness has certain

items, and the items themselves are not privileged, the witness has no privilege. See *Commonwealth* v. *Hughes*, 380 Mass. 583, 590 (1980), citing *Fisher* v. *United States*, 425 U.S. 391, 411 (1976). Nontestimonial evidence can be demanded. *Brennan, supra* at 780-783 (breathalyzer and field sobriety tests not testimonial). A custodian of corporate records is still bound by those rules.[4] The fact that a particular record custodian has a valid privilege does not excuse the corporation from its obligation.[5]

Thus, we hold that the witness cannot be held in contempt for invoking his privilege under art. 12 in so far as the very act of production demanded of him is protected. In view of our disposition of this matter, we need not reach the further issue, urged by the witness, that the sole stockholder and director of a corporation has a privilege under art. 12 in the corporate records themselves.

Accordingly, we vacate the judgment of contempt and remand this matter to the Superior Court for further proceedings in accordance with this opinion.

*So ordered.*

---

[4] We do not reach the issue whether a corporation has art. 12 rights. Although the witness has argued this point on appeal, he failed to argue it before the Superior Court. The witness argues that a statement in his motion to quash — "the materials are subject to the protection of Art. 12" — was sufficient to raise the corporation's rights below. We agree with the Commonwealth, however, that the witness's entire argument in the Superior Court dealt with the witness's individual right. We shall not address the argument advanced for the first time on appeal. See *Royal Indem. Co.* v. *Blakely*, 372 Mass. 86, 88 (1977).

[5] Our decision is not novel. Prior to *Braswell* v. *United States*, 487 U.S. 99 (1988), a number of United States Circuit Courts of Appeal reached a result under the Fifth Amendment that was similar to the result we reach today under art. 12. See, e.g., *In re Sealed Case*, 832 F.2d 1268, 1279 (D.C. Cir. 1987); *In re Grand Jury No. 86-3 (Will Roberts Corp.)*, 816 F.2d 569, 572-573 (11th Cir. 1987); *United States* v. *Lang*, 792 F.2d 1235, 1240-1241 (4th Cir.), cert. denied, 479 U.S. 985 (1986).